## STRONG *against* BIRCHARD.

By the word *month*, in the statutes of this state, is meant a calendar month.

A person subject to an overseer, is capable of appointing appraisers of land, on
which an execution against him has been levied, without the assent of his
overseer; such appointment not being a contract within the letter, or an act
within the spirit, of the statute.

The statute providing for the appointment of overseers, being in derogation of
common right, and the liberty of the citizen, must be construed strictly.

This was an action of ejectment; tried, on the general issue,
closed to the court, at *New-London, October* term, 1823, before
*Peters*, J.

The defendant in possession claimed title by virtue of the
levy of an execution in favour of *George W. Gordon* against
*Benjamin Ide*, and sundry intermediate conveyances from *Gor-
don* to him. The plaintiff claimed title, by virtue of a mortgage
deed from *Ide* to him, executed on the 24th of *February*, 1820,
and recorded on the 9th of *May*, 1820. *Gordon* brought his
action against *Ide*, attaching the demanded premises; recover-
ed judgment before the superior court, on the 24th of *January*,
1820; and took out execution, dated *March* 14th, 1820. This
execution the officer to whom it was committed, levied on the
demanded premises. The creditor chose one appraiser; the
debtor chose another; and both agreed upon a third; and the
persons thus selected appraised the land in question; which

Strong
*v.*
Birchard.

was regularly set off to the creditor. The execution was returned, and it was recorded, with the officer's return thereon, on the 10th of *May*, 1820. From the 1st of *January*, 1820, to the 1st of *January*, 1821, *John Hyde*, Esq. was overseer to *Ide ;* and the choice of appraisers was made by *Ide*, in the manner stated, without the assent or approbation of his overseer. The plaintiff claimed, that on said 10th of *May*, the lien created by *Gordon's* attachment, had expired, so that the plaintiff's deed had the priority ; also, that *Gordon* acquired no title by his levy, on the ground that no valid appointment of appraisers had been made. The defendant resisted these claims. The court decided, that the plaintiff was entitled to recover ; found the issue in his favour ; and rendered judgment accordingly. The defendant moved for a new trial.

*Goddard*, in support of the motion, contended, 1. That the word *month*, in our statutes, denotes a *calendar* month, and not, as in the *English* statutes, a lunar month. Even in *England*, the exceptions are so numerous, and the difficulties so great, that Lord *Kenyon*, in *Lacon* & al. v. *Hooper* & al. 6 *Term Rep.* 226. expressed his regret, that the rule had been so established at first. In *Avery* & al. v. *Pixley*, 4 *Mass. Rep.* 460. the court say, that a month mentioned generally has *immemorially* been considered a calendar month. So in *Hunt* & ux. v. *Holden*, 2 *Mass. Rep.* 170. *n.* Ch. J. *Parsons* said, it had been settled, that by *month* in the statute authorizing an administration *de bonis non*, was intended a calendar month. Throughout our statute-book, wherever a period of time is designated or limited by months, such time is invariably, and has been immemorially, computed by calendar months. *Stat.* 200. 202. 203. 204. 209. 210. 181. 269. 271. 152. 160. 161. 162. 163. 164. 165. 174. 248. 333. 377. 380. and elsewhere *passim*.

2. That the assent of an overseer to the choice of an appraiser, is not necessary. The statute *(tit.* 49. *s.* 6. *p.* 276.) confers the power to appoint overseers, and points out the cases in which such power may be exercised; and provides, that "no person under the appointment of an overseer shall be capable of making any *contract* without his consent." This statute is in derogation of common right, and the liberties of the citizen; and is, therefore, to be construed strictly. *Johnson* v. *Stanley* & al. 1 *Root* 246. *Waters* v. *Bozrah*, 2 *Root* 214. *Chalker* v. *Chalker*, 1 *Conn. Rep.* 82. *Knapp* v. *Lockwood*, 3 *Day* 131. 136. Is, then, the appointment of an appraisor, a *contract* or

New-London,
July,
1824.

Strong
v.
Birchard.

*bargain* within the statute? This act does not come within the definition of a contract, given by any elementary writer. 1 *Com. Cont.* 2. 2 *Bla. Comm.* 442. Nor is it within the spirit of the statute ; which was intended to prevent the making of improvident bargains, not the performance of those already made.

If the overseer's consent is necessary, in this case, why not require it before the levy upon, or sale of, personal estate ? The statute prescribing the mode of levying executions, has not required the creditor or the officer to consult the overseer, or to know that the debtor has an overseer. The court cannot impose new burdens. Even a *feme covert* is capable of appointing an appraiser. *Munn* & ux. v. *Carrington*, 2 *Root* 15. 1 *Swift's Dig.* 155.

*H. Strong*, contra, remarked, that the plaintiff's title was prior to that of the defendant, unless it was defeated, by the lien created by *Gordon's* attachment ; and that this had expired, if an execution levied on land must be recorded within four lunar months from the rendition of the judgment. He then contended, 1. That the word *month* in a statute, if nothing appears to the contrary, is to be understood as a lunar, and not as a calendar month. 2 *Bla. Comm.* 141. *Lacon* & al. v. *Hooper* & al. 6 *Term Rep.* 224. *Thomas* v. *Popham, Dyer,* 218. *b.* S. C. 4 *Leon.* 4. *The King* v. *Adderly, Doug.* 463. *Hurd* v. *Leach,* 5 *Esp. Rep.* 168. *Loring* v. *Halling,* 15 *Johns. Rep.* 119.

2. That the levy of *Gordon's* execution was valid, there not having been a valid appointment of appraisers. *Ide,* in the management of his business, was subject to the order and direction of an overseer ; and, without his assent, could not appoint an appraiser, or agree with the creditor as to the third.

In the first place, this act of *Ide* was within the *letter* of the statute, being in legal contemplation a contract. The creditor and the debtor agreed, that the land should be set off at the appraisal of the man selected. With regard to the third appraiser, there was not only the substance, but the very form of an agreement. The act in question was not the less a contract, because the law required it to be done. There was in fact an *aggregatio mentium.* The specific disability of an infant, is, the want of power to contract. But can an infant appoint appraisers, arbitrators, auditors, referees ?

Secondly, the act of *Ide* was within the *spirit* of the law ; as otherwise, his property would not be secure. The voice which

the debtor has in the appointment of appraisers, is an important privilege; and so it is viewed by the law. The property of the debtor may be wasted, in consequence of an injudicious appointment of appraisers, as well as by improvident bargains in other matters; and thus the great object of the statute, which is to preserve the debtor's property for his future support, may be defeated, in one case not less than in the other. In suits against a person under the care of an overseer, it has always been the practice to cite in the overseer, though the statute is silent on the subject.

The case of *Munn* & ux. v. *Carrington,* 2 *Root* 15. 18. did not decide, that a *feme covert,* without her husband's assent, could appoint appraisers; but it recognized the idea that his assent was necessary; and the decision proceeded on the ground that his assent had been given; the court observing, that the husband had evinced his assent, by joining with his wife in a subsequent action to recover the land levied upon.

HOSMER, Ch. J.    The title of the defendant, by the levy of execution on the estate of *Ide,* and successive conveyances, is valid, if by the term *months* in the statute, is meant calendar months, and not lunar; and if a person, under overseer, may appoint an appraiser, without his approval.

In *England,* a month in law generally is considered a lunar month, or twenty-eight days; because it is a uniform period, and because it falls, naturally, into a quarterly division by weeks. *Rex* v. *Peckham, Carth.* 406. *Rex* v. *Adderly, Doug.* 462. *Lacon* & al. v. *Hooper* & al. 6 *Term Rep.* 224. 226. *Castle* & al. v. *Burditt & al.* 3 *Term Rep.* 623. 2 *Black. Com.* 141. *Catesby's* case, 6 *Co. Rep.* 62. And the same is the rule adopted in the state of *New-York. Loring* v. *Halling,* 15 *Johns. Rep.* 119. 120. But in cases of lapse and *quare impedit,* six months are construed to intend six calendar months; the computation in the ecclesiastical courts being by months of this description. *Catesby's* case, 6 *Co. Rep.* 62. When bills of exchange and promissory notes are payable in a certain number of months, calendar months are intended. *Chitty on Bills,* 542. 543. (5th *Lond.* ed.) *Leffingwell* & al. v. *Pierpoint,* 1 *Johns Cas.* 99. 100. *Loring* v. *Halling,* 15 *Johns. Rep.* 120. In the case of *Lang* v. *Gale,* 1 *Maule & Selw.* 111. it was determined, that the word *month* may mean lunar or calendar, according to the intention of the contracting parties. This fluctuation in the construction of a word, cannot fail to produce more uncertainty and incon-

venience, than is countervailed by any imaginary benefit, when *New-London,* July, 1824. considering it as generally possessing one signification, but occasionally admitting of another. Of this opinion, undoubtedly, Strong *v.* Birchard. was Lord *Kenyon,* who in *Lacon* & al. v. *Hooper* & al. 6 *Term Rep.* 226. expressed himself in the following terms : " I confess, I wish that when the rule was first established, it had been decided, that *months* should be understood to mean *calendar,* and not *lunar* months ; but the contrary has long been determined." Uniformity in the construction of a word, not used technically, nor governed by the subject matter, is not only desireable, but unquestionably proper ; and the popular meaning of a term used in a statute, made to be understood, and practised upon, by the people, is the only intendment that ought to be adopted. Upon this sound and obvious principle, in this state, as well as in the sister state of *Massa husetts,* the word *month* has invariably been expounded to mean calendar month ; that is, to mean what every one, not a lawyer by profession, believes the word to mean. *Avery* & al. v. *Pixley,* 4 *Mass. Rep.* 460. The point was solemnly decided by the superior court, in a case in which I was counsel, more than thirty years since.

By the statute, in the edition of 1808. *p.* 384. the select-men are authorised, on summary enquiry, to appoint overseers of such persons as are likely to be reduced to want, by idleness, mismanagement, or bad husbandry ; and thereupon " no such person, while under such appointment, *shall be able to make any bargain or contract,* without the consent of such overseer." Is the appointment, by the debtor, of an appraiser on the execution against him, *the making of a bargain or contract ?* Certainly not. The statute is not to be extended beyond the plain meaning of the words used ; but, as was said in *Johnson* v. *Stanley* & al. 1 *Root* 245. being " against the general rights and liberties of the citizens ; it must, therefore, be cautiously and strictly pursued." So in *Chalk r* v. *Chalker,* 1 *Conn. Rep.* 79. 82. it was said, by this court, that the authority of an overseer, is " so liable to abuse, and so derogatory to the liberty of the subject, that it ought never to be extended beyond what is clearly warranted, by a strict construction of the statute." By strictly expounding the words of the law, that is, " bargain or contract," they only mean, " an agreement between two or more concerning something to be done, whereby both parties are bound to each other, or one is bound to the other." 1 *Pow.*

*New-London,*
July,
1824.

Strong
*v.*
Birchard.

on *Cont.* vi. When a debtor appoints a person an appraiser, by an act arbitrary, and without communication with any one, what constituent of a contract, has this proceeding ; and to this *novel* agreement, who are the parties ? There are no parties, and there is no agreement. The appointment of an appraiser, by an execution debtor, is no more a contract than the appointment of a sheriff, a commander of an army or navy, or any other like discretionary act ; nor was it ever so considered. The only bargain, if so it may be called, is the assent of the person designated to perform the duty implied ; but by this, he comes under no obligation *of contract* to the person appointing, nor is that person under any obligation to him ; but he is under the obligation of the law. To denominate this *a contract,* is in perversion both of the legal and popular meaning of the term.

A person under an overseer, is not presumed to want capacity, as an idiot or lunatic is ; but he is considered as idle and improvident. When, however, there is a proceeding against him *in invitum,* to take from him his property, in satisfaction of a debt, what reason is there, for subjecting him to another, lest in the appointment of an appraiser, he should, through idleness, or want of caution or forethought, dilapidate his estate ? Here is no temptation to improvidence ; and the placing him, in this respect, under the tutelage of a person much less interested than he is in the preservation of his property, would be an unnecessary and unreasonable abridgment of his personal rights. The statute contemplated no such privation of liberty ; and the mismanagement it intended to prevent, was only in the making of contracts, for which the habits of his mind, had disqualified him.

The title acquired by the levy of the execution, in my opinion, was unquestionable ; and therefore a new trial ought to be granted.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial to be granted.