Baldwin, J.
By the 2d section of the statute of the 6th of April 1839, concerning apprentices bound out by *298 overseers of the poor, it is enacted “ that all indentures of apprenticeship executed pursuant to an order of Court, shall be filed in the clerk’s office of the Court, within six months from the date of the order. And it shall be ^ie c^er^ t0 endorse on said indentures the day on which they were delivered to him to be filed; and unless such indentures shall be so filed and endorsed, they shall not be available so as to entitle the master, mistress, or their assigns, to the services of the apprentice.”
It appears in this case, that the indentures were filed and endorsed within six calendar, but not within six lunar months, from the date of the order. And it is insisted on the part of the defendants in error, that in the construction of this enactment, the Legislature must be taken to have had reference to lunar and not to calendar months. If this be so, then the effect must be to defeat the obvious intent of the Legislature. We know perfectly well that, with us, by general usage and popular acceptance, whenever the word months is used, without qualification or explanation, in common parlance or business transactions, it is understood to mean calendar and not lunar months. Now, in the use of language not technical, the Legislature must be supposed to express their meaning according to the sense in which it will be understood by the persons for whom they legislate. And that in point of fact, this word has uniformly been so employed, we also know, from the whole course of our legislation and judicial proceedings. It is impossible, therefore, that the legislative will, thus indicated,-can be controlled and perverted, and extensive mischiefs introduced into our jurisprudence, by the application to the subject of English adjudications. Whatever may be the meaning in this respect of the English statutes, (founded originally upon a different usage and habit,) such is not the meaning of our Virginia statutes; and that is all upon such a question, which it is our province to adjudicate.
*299 The other objections, which have been urged against the order of the County Court, and the indentures of apprenticeship pursuant thereto, are not well founded.
The statute concerning guardians, orphans, curators, infants, masters and apprentices, 1 Rev. Code, ch. 108, and the statute concerning the poor, &c., 2 Rev. Code, ch. 239, so far as they relate to the binding out children as apprentices by the overseers of the poor, are in pari materia, and. ought to be construed together, the more especially as the two statutes are revised acts, passed at the same session, and to take effect on the same day, so that neither could have been intended to operate as a repeal of the other.
The 25th section of the act concerning guardians, &c., 1 Rev. Code, p. 410, provides that “every orphan who hath no estate, or not sufficient for a maintenance out of its profits, shall, by order of the Court of the county or corporation in which he or she resides, be bound apprentice by the overseers of the poor, until the age of 21 years if a boy, or of 18 years if a girl, to some master or mistress, who shall covenant to teach the apprentice some art, trade or business, to be particularized in the indenture; and also, (except in the case of black and mulatto orphans,) reading and writing, and common arithmetic, including the rule of three, and to pay him or her 12 dollars at the expiration of the time.”
The 14th section of the act concerning the poor, &c., 2 Rev. Code, p. 268, provides that “ the overseers of the poor of each district shall monthly make returns to the Court of their county, of the poor orphans in their district, and of such children within the same, whose parents they shall judge incapable of supporting them, and bringing them up in honest courses; and the said Court is hereby authorized to direct the said overseers, or either of them, to bind out such poor orphans and children apprentices to such person or persons as the Court shall approve of, until the age of 21 years if a boy, or *300 18 years if a girl, on the terms prescribed and directed by the act 1 to reduce into one the several acts concerning guardians, orphans, curators, infants, masters and apprentices.’ ”
The 35th section of the last mentioned act, 2 Rev. Code, p. 274, provides that “ every bastard child may be bound apprentice, by the overseers of the poor of the district or corporation for the time being, wherein such child shall be born; every male, until he attains 21 years, and every female until she attains 18 years, and no longer; and the master or mistress shall be subject to the same conditions as are prescribed in the case of an apprentice, by the act, entitled ‘ an act to reduce into one the several acts concerning guardians, orphans, curators, infants, masters and apprentices.’ ”
It will be seen from a connected view of these statutory provisions:
1. That the 25th section of the act concerning guardians, &c. applies to legitimate poor orphan children of whatever colour; and the Court may order them to be bound out as apprentices by the overseers of the poor of the county, without regard to the district in which they may happen to reside; and there is nothing to prevent the sitting justices from acting upon their own knowledge, or proper information derived from others.
2. The orphans to which the 14th section of the act concerning the poor, &c. relates, are the same poor orphans mentioned and more particularly described in the 25th section of the act concerning guardians, &c. The object of the 14th section of the act concerning the poor, &c. was to extend the authority of the Court to the legitimate children, of whatever colour, of parents incapable of supporting them and bringing them up in honest courses; and to furnish the Court with means of information in regard to them, as also in regard to the poor orphans mentioned in the 25th section of the act concerning guardians, &c., by directing the overseers of *301 the poor of the several districts to make return of such poor orphans and children of incompetent parents; but it was not designed to prevent the sitting justices of the Court from acting upon their own knowledge or other proper information, nor to restrict the merely ministerial function of binding out (as the Court should direct) to the respective overseers of the several districts.
3. The 14th section of the act concerning the poor, &c., serves to shew that the overseers of the poor have no authority to determine, either in regard to poor orphans, or to poor children of incompetent parents, the master or mistress to whom, any more than the terms upon which, the person shall be bound out; but that the master or mistress must be approved of by the Court.
4. The same 14th section serves also to shew that the authority of overseers of the poor to bind out, under the direction of the Court, does not require that all the overseers of the poor of the county, or all the overseers of the poor of a district, shall unite in performing the act, but that it may be performed by any overseer of the poor of the county.
5. The 35th section of the act concerning the poor, &c., gave no power to the Court in relation to the binding out of bastard children, of whatever colour; but the whole authority and jurisdiction over the matter was vested in the respective overseers of the poor of the several districts, to be exercised, subject to the terms and conditions prescribed by law, according to their judgment and discretion, the only mode of manifesting which was by their executing the indentures of apprenticeship.
Thus the subject stood until the passage of the act already mentioned, of the 6th of April 1839, concerning apprentices bound out by overseers of the poor. Sess. Acts 1839, ch. 84, p. 51. The first section of that act provides, “ that hereafter when any free person of co-lour shall be bound out by order of any County or Cor *302 poration Court as an apprentice, it shall be the duty of the Court making such order to consider what will be the reasonable annual value of the services of such apprentice in the particular art or business which he or s^e t0 taught, for each year of his or her apprenticeship ; and if such apprentice shall have a father or mother living, the Court shall require that the master or mistress, as the case may be, shall pay him or her the reasonable value of such services for every year of the apprenticeship, except the last. And if there be no father or mother, then the same shall be paid to the overseers of the poor, for the use of the poor, and in either case the last year’s hire or value of the services shall be paid to the apprentice; and the failure of any master or mistress, or their assigns, for the period of three months, to pay the said allowance to the father, mother, or overseers of the poor, as the case may be, shall be sufficient cause with any Court, having jurisdiction thereof, to cancel or quash the said indentures.” And the third section of the same act provides “that no indentures of apprenticeship, entered into by the overseers of the poor, without the authority of the Court, and an order made to that effect, shall be of any force or validity whatever.”
The effect of this act was to abrogate the peculiar and exclusive power and jurisdiction of the respective overseers of the poor of the several districts in regard to bastard children, (of whatever colour,) by executing indentures of apprenticeship, and to vest such power and jurisdiction, so far as it was judicial, in the Court. This carried with it the authority to direct the ministerial act of executing the indentures to be performed by the overseers of the poor, which there was no reason for confining to the overseers of the poor of the district, who do not appear to have been contemplated by the statute: on the contrary it has reference, where overseers are mentioned, to overseers of the poor of the *303 county. It would have been idle in the Legislature to have made a distinction, with respect to the ministerial act of executing the indentures, between bastard children of colour and legitimate orphan children of co-lour ; and it is clear that none such was in the legislative mind.
In this case, the apprentices in question are bastards, their father being a slave, and therefore incapable of contracting matrimony in the mode prescribed by our law. And the County Court exercised its legitimate jurisdiction, by ordering them to be bound out by the overseers of the poor of the county, upon prescribed terms, to a person designated in the order. It cannot be supposed that the Court meant the overseers in a corporate character, or all of them individually, instead of such and so many of them as the law directs; and the law is obeyed, and the substantial purpose of the Court accomplished, when the act is performed by one or more of the overseers.
The indentures in question, therefore, were executed by due authority, and between the proper parties, and moreover express the relative legal obligations of the master and apprentice. This is enough in these statutory indentures to give adequate remedies to the apprentice, and others entitled, in their own names, for any failure of duty on the part of the master, whatever may be the form of the covenants.
As to the objection that the order of Court, and the indentures in conformity therewith, require the apprentices to serve only until they attain the age of seventeen, instead of eighteen years, it furnishes no sufficient reason for declaring the indentures void. Having been authorized and executed by competent authority, they created the relation of master and apprentice, during the existence of which the custody by the master is not unlawful. If, therefore, the Court had committed an error of judgment in this particular, it could not be corrected *304 by a writ of habeas corpus. But the law in regard to the term of service by the infant, is merely directory; and, moreover, the departure from its direction in the present instance, was manifestly for the benefit of the' aPPren tices.
My opinion is, that the judgment of the Circuit Court ought to be reversed, and the apprentices remanded into the custody and service of their master; but that in the exercise of the discretion given by the habeas corpus act, costs ought not, under the circumstances of this case, to be allowed either in this Court or in the Court below.
Allen, J. The act, entitled “ an act to reduce into one the several acts concerning guardians,.orphans, curators, infants, masters and apprentices,” 1 Rev. Code, p. 405, would seem from the very title to be intended to extend to and embrace all infants, whether white or free coloured, legitimate or illegitimate, whose condition in life was such as to make it proper to bind them out as apprentices. In conformity with our system, a general superintendence over the whole matter is conferred upon the Court of the county or corporation where the infant resides; and the overseers of the poor, so far as they are authorized to act in relation to the matter, act as the agents of and in subordination to the Court. ■ If the overseers cannot prevail upon a proper person to accept of the orphan as an apprentice, the guardian, with the approbation of the Court, may take from the personal estate such sums of money as may be necessary for the immediate support of the orphan until the overseers can find a suitable master. Every orphan who hath no estate or not sufficient for a maintenance out of the profits, shall by order of the Court be bound apprentice by the overseers of the poor. The Court is to hear complaints of apprentices, to determine the cause in a summary way, for proper cause to remove the apprentices, *305 and bind them to other masters if necessary. Many of these provisions of necessity apply to all orphans and apprentices, without reference to colour or legitimacy; and it being the manifest intention of the Legislature to embrace all in many of the provisions of this act, it seems to me too narrow a construction of the 25th section to confine the power there conferred to legitimate children alone. The illegitimate child being jilius nullius, may within the scope of this statute be fairly treated as an orphan from his birth.
The act in relation to the poor, 2 Rev. Code, ch. 239, being embraced in the same revision, and so far as relates to this matter, being in pari jnateria, is to be construed in connection with the act first referred to. The 14th section extends the authority of the Court to poor children whose parents are incapable of supporting them; a class not embraced by the 25th section of the act in relation to guardians. And the 35th section provides, that a bastard child may be bound apprentice by the overseers of the district wherein such child shall be born; and in each instance to be bound on the terms and conditions of the act in relation to guardians, &c. If I am correct in supposing that, by the first recited act, the Court was authorized to direct the binding out of bastard children, this authority is not taken away by the 35th section of the poor law. The most that could be claimed for it would be, that it conferred power on the overseers of the district to bind out bastard children without the previous order of the Court. Whether it did so or not, is unnecessary to consider in this case. For by the 3d section of the act of April 6th, 1839, p. 51, it is provided that no indentures of apprenticeship, entered into by the 'overseers of the poor without the authority of the Court, and an order made to that effect, shall be of any force or validity whatever. Since this act, the control over the subject is vested in the Court exclusively. It had, in my view of the previous acts, *306 concurrent authority with the overseers of the district; and when the power was taken away from the overseers of the district to act separately, it remained with the Court to be exercised as theretofore, in the mode prescribed by the 25th section of the act concerning guardians, as modified by the 1st and 2d sections of the act of 1839. The 25th section of the act in relation to guardians, directs that the infant shall, by order of the Court, be bound apprentice by the overseers of the poor. It does not require that all the overseers or any particular number shall act. The duty is merely ministerial, and may as well be executed by one as all. And such seems to have been the legislative construction : for by the 14th section of the poor law, by which the overseers of the poor of each district are required to report to the Court the poor orphans and poor children in their district, the Court is authorized to direct the said overseers or either of them to bind out. This direction may be given to any of the overseers of the poor, and is not confined to the overseers of the district. I therefore think the indenture in this case, though executed by. but.pue overseer, and though it is not stated he was oyerse'etqof Jthe,-district in which the bastard child was born, is not invalid. On the other questions presented by the assjgpmeqit of errors and discussed at the bar, I concur with Judge Baldwin. I think the judgment should:bp reversed, and the petitioners remanded.
Brooke, J. I do not think this was a fit case for a writ of habeas corpus. If the indentures were erroneously taken by one overseer of the poor, instead of the number required by the law, the proper forum in which to obtain redress was the County Court. That Court would afford relief to the apprentices for that or any other injury of which they might complain.
I think, however, that the indentures were well taken by one overseer of the poor. In these cases of police, *307 the acts of the police officers are not to be construed very technically ; if substantially right, it is all that can be expected.
Whether the children of free persons of colour are all to be construed bastards, it is not material to decide in this case. There is no form of marriage, as regards them, pointed out by our statutes. It is true they are permitted to inherit the real property of their parents, not as being legitimate, but because the law has made no other provision for it; and where that is the case, as property is the creature of the law, it is permitted to pass according to our act of descents.
As to the meaning of the word month in our laws, I concur with my brethren that calendar months and not lunar months is meant in all our acts of the Legislature.
I think the judgment of the Circuit Court should be reversed, and the writ of habeas corpus quashed; and the apprentices sent back to their master.
The other Judges concurred in the judgment, which reversed the judgment of the Circuit Court, but without costs, and remanded the apprentices tody and service of their master, butjmt <> the Circuit Court.