# BARTOL vs. CALVERT, Adm'r.

1. An objection to a claim against an insolvent estate, that it was not filed within six months after the decree of insolvency, may be made at any time before the hearing, or at the hearing.
2. Objections going to the verification of a claim, or to its correctness or validity, must be filed within nine months after the decree of insolvency.
3. Objections to the time of filing a claim are properly triable by the court.
4. The failure to object to evidence, or to move for its exclusion, concedes its admissibility.
5. The term "month," as used in the act of 1843 regulating the proceedings on the settlement of insolvent estates, means a *calendar*, and not a *lunar* month.
6. Where a claim against an insolvent estate is rejected, on the ground that it was not properly verified, or was not filed in time, and in consequence of its rejection a surplus is left in the hands of the administrator, such surplus should be appropriated to the creditor, if his claim is not barred on some other ground, in preference to the distributees.
7. A judgment rejecting a claim against an insolvent estate, under the act of 1843, is a final judgment which will support a writ of error, although no issue is made up under the act.

ERROR to the Court of Probate of Mobile.

The estate of Charles Hammond, deceased, was declared insolvent on the 20th February, 1846, and a final decree of settlement and distribution was made on the 9th September, 1851. The claim of the plaintiff in error is not mentioned in this decree, but by consent of parties, the decree was suspended, and the plaintiff's claim was set for hearing on the 12th September, 1851, with the understanding, that if the claim was allowed, the decree should be opened, and the claimant be let in to receive his *pro rata* share. On the hearing, a bill of exceptions was sealed, at the instance of the plaintiff in error, from which it appears that the plaintiff at

that time presented his claim against the estate, consisting of a promissory note executed by the intestate, and the transcript of a judgment thereon rendered in the Circuit Court, on the plea of insolvency. The administrator objected to this claim on the following grounds: 1. Because it was not filed within six months; 2. Because it was not filed at all until the day of hearing; 3. Because no affidavit was filed; 4. For insufficiency of affidavits; all of which objections were filed on the day of hearing, September 12, 1851. The claimant then moved the court to strike out the objections, because they came in too late. The transcript of the judgment was not filed until the day of hearing. The said note bore no marks of having been on file at all; but among the list of claims against the estate, kept in a book by the clerk of the court, was the following entry in his hand-writing: "James S. Bartol's claim. By note dated September 5, 1836, payable to the order of Whitaker & Bartol, at six months, $3806 58. Filed August 5, 1846. Affidavit of claimant filed August 17, 1846, by J. Lockwood, attorney and affidavit." The note presented, which corresponded precisely with the note described in this entry, was found in the file of papers in the Circuit Court, and taken from thence on the day of the hearing. The attorneys, who attended to the case in the Circuit Court, were shown to be absent from the State.

This was all the evidence offered, and no objection was made to the admissibility of any portion of it. The claimant also contended that no objections could be made to the transcript of the judgment, going behind the judgment itself, and that it needed no affidavit. The court refused to strike out the objections filed by the administrator, considered them sustained by the evidence, and rejected the claim, to which the claimant excepted.

In the decree which was rendered on the 9th September, 1851, the surplus remaining in the hands of the administrator, after satisfying the claims which were then allowed against the estate, was decreed to the distributee of the intestate. The errors assigned are: 1. The rejection of the plaintiff's claim; 2. Directing the surplus in the hands of the administrator to be paid over to the distributee.

JOHN T. TAYLOR, for plaintiff in error, contended:

1. That the objections to the claim came too late.

2. That the evidence of the filing of the claim was sufficient. The clerk is required to keep a list of all claims against insolvent estates, with *the time of filing* the same; and his entry is sufficient proof of the filing.

3. That if the claim was properly rejected, as in favor of other creditors, it was nevertheless a good subsisting debt against the estate, and was entitled to preference over the distributees of the intestate.

P. PHILLIPS, *contra:*

When a statute uses the word "month," without saying " calendar," it means a lunar month. 15 Johns. 120; 2 Black. Com. 141. This estate was declared insolvent on the 21st February, 1846, and Bartol's claim was filed August 17th, 1846, which was nine days after the expiration of the six months; nor was the evidence sufficient to show that it was filed at that time. There is no law requiring the court to receive as evidence the book kept by the clerk containing the memorandum which was relied on.

There was no sufficient affidavit of the claim; nor was the person, by whom it was taken, authorized to administer an oath. It is well settled, that the courts of one State will not take judicial knowledge of the justices of the peace in another State, and the certificate of the clerk, that he was a justice, gives it no sanction.

GOLDTHWAITE, J.—On the hearing of the claim, which was more than nine months after the estate had been declared insolvent, objections were filed by the administrator, to the effect, that the claim was not filed within six months after the decree of insolvency, and that it was not properly verified. The first question which is presented upon the record, arises upon the action of the court below in allowing these objections to be filed at that time. By the provisions of the ninth section of the act of 1843, Clay's Dig. 194 § 10, every person having any claim against an insolvent estate, is required to file the same in the clerk's office, within six months after the estate is declared insolvent; "and every such claim shall be

verified by the affidavit of the claimant; and the clerk shall give a receipt therefor to the claimant, &c., and if no opposition shall be made to the allowance of such claim in the manner hereinafter provided, within nine months after the time when the estate was declared insolvent, such claim shall be admitted and allowed as a good and valid claim against the estate without further proof." The decisions of this court upon this section of the statute have settled, that if the claim is not filed within six months from the declaration of insolvency, it is barred as against such estate, (Hollinger v. Holley, 8 Ala. 554,) and that the omission to verify the claim by affidavit does not have that effect; that the affidavit need not be filed at all, unless called for by an exception to the claim on that ground, but may be made at any time after objection, and before the hearing. Hollinger v. Holley, *supra;* Shortridge v. Easely, 10 Ala. 520; Brown & Co. v. Easly, ib. 564. We may remark also, that the ninth and tenth sections of the act of 1843 contemplate two classes of exceptions which may be made against insolvent estates : the one going to their standing in court, such as the time of filing, and their verification, and the other to the validity or defence of the claim itself; the latter requiring an issue to be made up and a trial by jury. The object of the ninth section was, to give to the administrator and the creditors three months to examine into the condition, and make objections to the allowance of the claims, for any cause which might exist; and it is obvious that they would be deprived of this right, if objections were required to be made within nine months to a claim filed more than six months after the decree of insolvency. But in relation to exceptions going to the verification of the claim, or the claim itself, there can be no hardship in holding the administrator and the creditors to the letter of the statute; while on the other hand, by the adoption of a different rule injustice might frequently result to a claimant who, reposing upon the terms of the statute, and finding no objections filed within the time prescribed by its provisions, takes it for granted that none will be filed, and under that impression omits either to verify his claim, or to provide the evidence necessary to sustain it. These reasons lead us to the conclusion, that the motion to disallow the exceptions going to the

verification of the claim should have prevailed; but as to the objections going to the time of filing, the court committed no error in allowing them to be made at the hearing.

The record shows that the claim set up against the estate consisted of a promissory note, executed by the intestate, and a judgment rendered thereon, on the plea of insolvency, in the Circuit Court of Mobile county, under the act of 1843. Clay's Dig. 195 § 13. The evidence offered in connection with the claim was the docket of the clerk of the County Court, kept in pursuance of the ninth section of the act last referred to, (Clay's Dig. 194 § 10,) in which the entry of the claim was made, corresponding in all respects with the note offered, the name of the claimant, and the additional entry to the effect that the claim was filed on the 17th August, 1846; and also the transcript of the judgment on the note. The entry was proved to be in the hand-writing of the clerk, and was received without objection. The admissibility of the evidence being conceded by the failure to object to it, or to move for its exclusion, the question is alone as to its suffi-ciency, and in that aspect we can entertain no doubt that the testimony sufficiently established the filing of the claim, on the day specified in the entry. And as this was a matter proper to be tried by the court, an appellate court may re-view its judgment.

That the note which constituted the claim at the time it was filed, subsequently passed into a judgment under the twelfth section of the act of 1843, (Clay's Dig. 195 § 13,) can make no difference; the claim exists, although in a different shape, and the utmost effect of the judgment under the sec-tion referred to is to ascertain its amount.

It is however insisted on the part of the defendant in error, that the term "months" as used in the ninth section of the statute (Clay's Dig. 194 § 10) prescribing the time for the filing of claims against insolvent estates, must be construed to mean lunar instead of calendar months, and that by giving that construction, the claim is thrown outside of the statute. Upon the English authorities the rule is well settled, that a statutory month is a lunar month, unless otherwise expressed, 2 Black. Com. 141; 1 Wm. Bl. 450; Crooke v. McTorish, 1 Bing 307; but in that country the rule, although well estab-

lished, has called forth an expression of regret from eminent judges, (1 Wm. Black. 450,) and there a different construction prevails in ecclesiastical cases, (Crooke v. McTorish, *supra*,) and in commercial contracts, (3 Br. & B. 250.) In the United States there is some conflict of decision, but the current of authority is to the reverse of the English rule. Hunt v. Holden, 2 Mass. 170; Avery v. Pixley, 4 Mass. 460; Commonwealth v. Chambre, 4 Dall. 143; Kimball v. Lawson, 2 Verm. 138; Strong v. Birchard, 5 Conn. 357; Churchhill v. Merchants' Bk. 19 Pick. 532; Brewer v. Harris, 5 Gratt. 285. The general rule established by the American cases commends itself strongly by its superior convenience, its correspondence with our business transactions, as well as the received understanding in the community of the meaning of the term; and for these reasons we adopt it in preference to the English rule. It results from these views, that the evidence offered was sufficient to show the filing of the claim in question, within the time prescribed by the statute, and as no exceptions could be taken to the claim on any other ground, it follows that the decision of the court in rejecting the claim was erroneous.

As the case must be remanded, and another hearing will be had, it is perhaps necessary that we should express our opinion upon another point presented. After rejecting the claim of the plaintiff in error, and after paying all the allowed claims against the estate, a surplus was left in the hands of the administrator, which was by direction of the court decreed to the general distributee. The writ of error being taken upon the rejection of the claim, and not to the decree rendered upon the final settlement, we could not properly review the action of the court below in this particular, as the record now stands; but as to the naked question of law, there can be no doubt that if a claim is rejected against an insolvent estate, on the ground that it was not filed within the time required, or for not being properly verified, and in consequence of its rejection a surplus is left in the hands of the administrator, such surplus should be appropriated to the creditor in preference to the distributee, if his claim against the estate is not barred on some other ground. The cases of Phelan v. Phelan, 13 Ala. 679, and Middleton v. Maul, 16 Ala. 479, are conclusive upon this point.

A question has also been raised in consultation as to whether the writ of error should not be dismissed, as not falling within the thirteenth section of the act of 1843, (Clay's Dig. 195 § 14.) A majority of the court entertain the opinion that by the decree of insolvency the court acquires jurisdiction of the claim, and that the effect of the statute regulating proceedings in relation to insolvent estates, (Clay's Dig. 194, 195,) is, to convert each contest arising upon a claim, into a distinct and separate proceeding, the administrator or the creditors in his name being the parties on one side, and the claimant on the other; and that a judgment rejecting the claim, even where no issue is directed or made, if it does not come within the meaning of the section of the act of 1843, before referred to, is a final judgment within the meaning of the act of 1821, (Clay's Dig. 297 § 4,) to which a writ of error will lie.

The judgment must be reversed, and the cause remanded.