| 31 | 173 |
|----|-----|
| 111 | 422 |

| 31 | 173 |
|----|-----|
| 124 | 703 |

| 31 | 173 |
|----|-----|
| e143 | 486 |

</div>

## THOMAS SPRAGUE v. W. H. NORWAY.

APPOINTMENT OF INSPECTOR OF ELECTION. — If the Inspector of an election, appointed by the Board of Supervisors, fails to attend at the polls, and one is there appointed by the Judges, instead of being appointed by the electors present, it is not such an irregularity as will vitiate the election at that precinct, provided the result of the election is not thereby changed.

READING THE BALLOTS AT ELECTION.—If the Judges and Inspector of an election cannot read, and for that reason a person who is not a member of the Election Board, nor a Clerk, takes the ballots from the box and reads them to the tellers, at the invitation of the Board, it is not an irregularity which will vitiate the election at that precinct if the result of the election is not thereby changed.

IRREGULARITIES AT ELECTION.—As a general rule, mere irregularities which do not affect the final result do not vitiate an election.

WORD "MONTH" IN THE CONSTITUTION AND LAWS.—Whenever the word "month" is used in the Constitution and laws of this State, without any qualification, a calendar and not a lunar month is intended.

MEANING OF WORDS USED IN LAWS.—In construing laws, words not technical will be presumed to have been used in the sense in which they are understood by those for whom the laws are made.

APPEAL from the County Court, Santa Barbara County.

Sprague and Norway were candidates for the office of County Surveyor of Santa Barbara County at the general election held on the 6th day of September, 1866. Norway was declared elected, and Sprague contested. Several persons voted for Sprague who had first arrived in this State more than six lunar but less than six calendar months before the election. The County Judge rejected these votes, and adjudged that

Norway was elected. If they had been counted it would have changed the result. The contestant appealed.

The other facts are stated in the opinion of the Court.

*Haight & Pierson*, for Appellant, argued that a residence of six lunar months in the State was sufficient to make a qualified elector, and that when a six months' residence was required in the Constitution, it meant six lunar and not six calendar months; and cited Black. Com., Book II, Chap. 9, page 141; 1 Steph. Com. 265; *Lacon* v. *Hooper*, 6 Term R. 226; *Loring* v. *Halling*, 15 John. 120. They also argued that as the Legislature had not defined the meaning of the word "month," it was left as at common law; and cited *Redmond* v. *Glover*, Dudley, 107; and *Parsons* v. *Chamberlain*, 4 Wend. 512. They also argued that the irregularities at the Carpenteria Precinct vitiated the election at that precinct, and that its returns should have been excluded.

*S. F. & J. Reynolds*, for Respondent, upon the question of the meaning of the word "month" in the Constitution, argued, that as the people of this State had never computed by lunar months for any purpose, it was evident the framers of the Constitution intended it to mean calendar months when used in that instrument. They also argued that the irregularities complained of at the Carpenteria Precinct, as they did not change the result, were not sufficient to set aside the election in that precinct.

By the Court, SANDERSON, J.:

The turning points in this case, and therefore the only ones which we find it necessary to consider, relate to the effect of certain irregularities which occurred at Carpenteria Precinct, and the meaning of the word "months" as used in our Constitution and statute defining the qualifications of an elector; it being claimed on the part of the appellant that the irregularities suggested vitiated the election at the precinct in ques-

tion, and that by the word " months," lunar and not calendar months are intended.

The irregularities complained of were the appointment by the Judges of the Election, and not by the electors there assembled, of a person to serve as Inspector, the Inspector appointed by the Board of Supervisors having failed to attend; and the taking of the ballots from the box and reading them to the Tellers by one Heath, who was neither Judge, Inspector, nor Clerk of the Election. It appears that neither the Judges nor the Inspector could read, and that Heath was invited by them to read the ballots for that reason.

I. There is no pretense that by reason of these irregularities any illegal votes were cast for the respondent, or that the ballots were not read correctly by Heath, or that the contestant was not allowed in the tally all the votes that were cast for him, or that the respondent was allowed more votes than he was entitled to, or that they contributed in any manner to cause the respondent to be declared duly elected. Mere irregularities which do not affect the final result, or in other words, do not produce a different result from that which would have otherwise happened, are not vicious. Electors cannot be denied the benefit of their votes upon such slender grounds. The statute expressly provides: "That no irregularity or improper conduct in the proceedings of the Judges, or any of them, shall be construed to amount to such malconduct as to annul or set aside any election, unless the irregularity or improper conduct shall have been such as to procure the person whose right to the office may be contested, to be declared duly elected, when he had not received the highest number of legal votes." (Sec. 52 of the Act regulating elections.) We consider that the irregularities in question belong to the class referred to in this provision of the statute.

II. The English cases cited by appellant are to the effect that the word " month " when used generally in a statute is to be construed to mean a lunar, and not a calendar month. Such is undoubtedly the rule in England, but some of the Judges have regretted that such is the case. In *Lacon* v.

*Hooper*, 6 Term R. 226, Mr. Chief Justice Kenyon said: "I confess I wish that when the rule was first established it had been decided that months should be understood to mean calendar and not lunar months; but the contrary has been determined so long and so frequently that it ought not again to be brought in question." In America the rule is not uniform. In some States the English rule has been followed, while in other States the contrary rule has been adopted. (*Hunt* v. *Holden*, 2 Mass. 170; *Avery* v. *Pixley*, 4 Mass. 460; *Williamson* v. *Farrow*, 1 Bailey, 611; *Commonwealth* v. *Chambre*, 4 Dall. 143; *Pyle* v. *Maulding*, 7 J. J. Marsh. 202; *Commonwealth* v. *Shortridge*, 3 J. J. Marsh. 638; *Kimball* v. *Lamson*, 2 Verm. 138; *Strong* v. *Birchard*, 5 Conn. 357; *Churchill* v. *Merchants' Bank*, 19 Pick. 535; *Bartol* v. *Calvert*, 21 Ala. 42; and *Brewer* v. *Harris*, 5 Gratt. 285.)

With us, by general usage and common acceptation, whenever the word month is used without qualification it is understood to mean a calendar and not a lunar month, both in common speech and all business transactions. It is a general rule that the Legislature must be supposed to have used words not technical in the sense in which they are understood by those for whom they legislate. Our people have never been in the habit of computing time by lunar months for any purpose, and were we to adopt the English rule, both they and the past legislators of the State would be very much surprised to find that a word universally understood by them in one sense has been used in the Constitution and statutes of the State in a very different sense. Under these circumstances, the question being a new one in this State, we feel at liberty to adopt what is obviously the better rule. We therefore hold that whenever the word month is used in the Constitution or laws of this State without qualification, a calendar and not a lunar month is intended.

The judgment is affirmed.