Rutherford Easley, an Insane Person, by A. J. Dye, His Curator, Plaintiff in Error, v. R. C. Bone, Defendant in Error.

**St. Louis Court of Appeals, February 18, 1890.**

1. **Insane Persons.** When a person has been adjudged insane, in conformity with the statute, and no one can be found who will accept the office of guardian of his person, because of his dangerous character, the court has power, for the purpose of conserving his estate, to appoint a guardian of his estate merely.

2. ———. In such case, it is unimportant whether the order of appointment designates the appointee as curator or guardian, the meaning of the two words, when applied to the care of an estate merely, being the same.

Easley v. Bone.

*Error to the Barry Circuit Court.*—Hon. W. F. GEIGER, Judge.

REVERSED AND REMANDED.

*N. Gibbs* and *Thos. M. Allen*, for the plaintiff in error.

The probate court has jurisdiction over "appointment of guardians and curators of minors and persons of unsound mind." Const. Mo., art. 6, sec. 34; 1 R. S. 1879, sec. 1176; Wells on Jurisdiction of Courts, sec. 272. The probate court has jurisdiction, on information given, to inquire into the insanity of any person in the county, and, if he be found insane, has jurisdiction over his person and his estate. 2 R. S. 1879, chap. 116. The terms "guardian of the estate," and "curator of the estate" are identical. In this state the guardian of the estate is called the curator. This suit was properly brought in the name of the insane person by his guardian. R. S. 1879, sec. 5804. The action of the court in appointing a guardian or curator cannot be questioned collaterally.

*E. C. Frost*, for the defendant in error.

The statutes provide for the appointment of a guardian of the person and estate of an insane person. 2 R. S. 1879, chap. 116, sec. 5791. This statute is mandatory and must be strictly complied with. *State ex rel. v. Baird*, 47 Mo. 304. The words "guardian" and "curator" are not identical and are not used interchangeably in the statutes of this state. 2 R. S. 1879, chap. 116, secs. 5799, 5833; chap. 37, secs. 2561, 2569, 2578. This suit is in the name of the insane person by his curator and this is wrong. *Reed v. Wilson*, 13 Mo.

23; 2 R. S.. 1879, chap. 116, sec. 5804. The probate court is authorized to appoint a curator of the estate of a non-resident lunatic. R. S. 1879, secs. 5833, 5834.

THOMPSON, J., delivered the opinion of the court.

By the constitution of Missouri (art. 6, sec. 34), the probate courts established by the general assembly are invested with "jurisdiction over all matters pertaining to * * * the appointment of *guardians* and *curators* of minors and persons of *unsound mind*." By statute, after an inquisition in a mode prescribed, "if it be found by the jury that the subject of the inquiry is of unsound mind, and incapable of managing his or her affairs, the court shall appoint a *guardian* of the *person* and *estate* of such insane person." R. S. 1879, sec. 5791. The person so appointed is required to enter into a bond "conditioned that he will take due and proper care of such *insane person*, and manage and administer his *estate* and *effects* to the best advantage," etc. R. S., sec. 5795. By another section of the same chapter, "every such guardian shall take charge of the *person* committed to his charge, and provide for his *support* and *maintenance* as hereinafter directed." R. S., sec. 5799. By the next section, "it shall be his duty to collect and take into his possession the goods, chattels, moneys and effects, books and other evidences of debt, and all writings touching the estate, real and personal, of the person under his guardianship."

In the case before us the probate judge, unable to find any person who would accept the office of guardian of the person of Rutherford Easley, the plaintiff, because of his being dangerously insane, appointed A. J. Dye to be the curator of his estate merely; and in this character the plaintiff, by Dye, has brought the present action on an account. A motion was made to dismiss the action, on the ground that the plaintiff (meaning Dye) has no right or legal capacity to sue. Upon this

motion the facts above stated transpired without any dispute; and thereupon the circuit court dismissed the suit, and the plaintiff, through Dye, prosecutes an appeal to this court. No objection is made as to the manner in which the question was raised in the circuit court.

We have come to the conclusion, though not without some hesitation, that where a person has been adjudged insane, in conformity with the statute, and no one can be found who will accept the office of guardian of his person, because of his dangerous character, the court has power, for the purpose of conserving his estate, to appoint a guardian of his estate merely; and we attach no importance to the fact that the order of appointment designates the appointee as "curator" instead of "guardian,"—the meaning of the two words, when applied to the care of an estate merely, being the same. A very strict reading of the statute might lead to the conclusion that the grant of jurisdiction is to appoint a person who shall be at once guardian of the person and of the estate of the insane person; but we think that it is capable of being read in conformity with the mathematical axiom, that the whole includes all its parts, so as to reach the conclusion that a grant of jurisdiction to appoint a guardian of the person and of the estate includes a jurisdiction to appoint a guardian of the estate only, where insurmountable obstacles preclude the appointment of a guardian who will act in both capacities.

We do not question the soundness of the view taken by the court of errors of Connecticut, that a statute providing for the appointment of an overseer of an insane person is in derogation of common right and of the liberty of the citizen, and must be construed strictly. *Strong v. Birchard*, 5 Conn. 357. But this principle applies rather to the question whether a person shall be adjudged incapable of taking care of himself, so as to be restrained of his liberty, or whether he shall be

adjudged incapable of caring for his property, so as to be dispossessed of it, than to the question, what shall be done to conserve his property after the fact of his insanity has been duly established in a proceeding prescribed by law for that purpose. That fact being established, we.have no doubt that the provisions of the statute in regard to the conservation of his estate are to be construed remedially and in accordance with the well-known rule that, in construing a *remedial* statute, we are to consider the mischief which it was intended to suppress and the remedy provided for that mischief, and are so to construe the statute as to suppress the mischief and advance the remedy. *Heydon's Case*, 3 Co. Rep. 7 *b*; *Turtle v. Hartwell*, 6 T. R. 429; *Twycross v. Grant*. 2 C. P. Div. 530; *Vigo's Case*, 21 Wall. (U. S.) 648; Endlich on Statutes, sections 103, 107. Many illustrations of this principle could be given which involve a wider departure from the literal reading of the statute than we are required to take in this case. Thus, a statute, giving a *single woman* a right of action against the putative father of her illegitimate child, for its maintenance, has been held to include a *married woman* living apart from her husband,—the object of the statute being to compel such fathers to support their illegitimate offspring. *Reg. v. Pilkington*, 2 El. & Bl. 546. So in an act of congress granting by way of donation lands in Oregon Territory to "every white settler or occupant, one half section, or three hundred and twenty acres, if a single man," etc., the words *"single man"* have been held to include an *unmarried woman*. *Silver v. Ladd*, 7 Wall. (U. S.) 219, 226.

But we need not extend illustrations of this principle. We could hardly suggest a fitter case for its application than the one before us. The primary effort of all statutory interpretation is to discover, in the language of the statute, the intention of the legislature as applied to the state of facts before the court. We

cannot doubt that the legislature never intended, by using the words "person and estate" conjunctively throughout the statute, that the probate court should have no power to appoint a guardian of the estate of an insane person, without the same person being the guardian of his person, but that his estate should be allowed to go to waste from the circumstance that his malady had progressed to such an unfortunate degree that no one could be induced to charge himself with the custody of his person.

We add that, in our opinion, even assuming that the probate court, in the appointment in this case, exceeded its jurisdiction, the sureties on the curator's bond would be estopped from setting up that fact.

The judgment will be reversed and the cause remanded. Judge ROMBAUER concurs. Judge BIGGS concurs in the result.