GUARANTY TRUST AND SAFE DEPOSIT COMPANY, ET AL., APPELLANTS, VS. BUDDINGTON, WILSON & CO., ET AL., APPELLEES.

1. The term "months," when used in a statute of this state, means calendar months and not lunar month, unless there is something in the statute which indicates that a contrary meaning was intended.

2. The terms "months," as used in the act of November 27, 1828, section 8, page 154, McClellan's Digest, providing for the publication of orders in chancery causes for absent defendants to appear and plead, and for decrees *pro confesso* in default thereof means calendar months.

3. Jurisdiction is not acquired of a non-resident defendant by publishing for a period of four lunar months, but of less than four

calendar months, where the statute (section 8, page 154, Mc-Clellan's Digest) requires the publication to be made for four months, and there is nothing in it showing that lunar months were intended; and decrees rendered upon such publication of an order to appear and plead are of no effect as to such defendant.

Appeal from the Circuit Court for Clay county.

The facts of the case are stated in the opinion.

*H. Bisbee* for Appellants.

*Fleming & Daniel, C. P.* and *J. C. Cooper, A. W. Cockrell & Son.*, for Appellees.

RANEY, C. J.:

The causes in which the orders of publication were made, were consolidated subsequently by an order of the court. Buddington, Wilson & Co., were complainants in one, and Philip J. Canova was the complainant in the other of them.

The order in the case in which Buddington, Wilson & Co. were complainants, was made July 29th, 1884, and directs that the Chester Construction Company, and the Guaranty Trust and Safe Deposit Company, bodies corporate organized under the laws of States of the United States other than Florida, and residing and having their principal places of business at stated places in such other States, appear and answer the bill on or before the first Monday of Decem-

ber, 1884, or that the bill shall be taken as confessed, and directs that the order be published once a week for four months in some paper published in Clay county. On the 15th day of January, 1885, an order was made reciting that it appeared to the satisfaction of the court from the affidavit of H. E. Bemis, business manager, that the above order of publication, designating it, had been published in the named paper once each week for four consecutive months, and "one month having expired of the time thereby limited for appearance and answer," and that the defendants had failed to appear, adjudges that the bill be taken for confessed, and that the cause be proceeded in *ex parte* as against the two defendants.

The law under which the order of publication was made is the thirteenth section of the act of November 27th, 1828, sec. 8, p. 452, Thompson's Digest; sec. 8, p. 154, McClellan's Digest, which provides that the order shall be published in any newspaper published in the circuit in which the bill is filed, as follows: "If the defendant resides in this state, but not in the circuit in which the bill is filed, for two months; if in any other part of the United States, for four months," and after stating "six months" and "nine months" as the periods of publication where the defendant resides in the West India Islands or in Europe, as the case may be, it reads: "Which publication shall be when the defendant resides in the United States, once

a week, and when he or she resides out of the United States, once a month, during the periods above described."

The first question to be decided is whether the word month as used in this statute means a lunar or a calendar month. Blackstone, after stating that a year is a determinate and well known period consisting commonly of 365 days, and in leap years of 366, says that a *month* is more ambiguous, there being *in common use* two ways of calculating months, either as lunar consisting of 28 days, the supposed revolution of the moon, thirteen of which make a year, or as calendar months of unequal length, according to the Julian division in our common almanacs, commencing at the calends of each month, whereof in a year there are only twelve. A month, he says, is a lunar month or 28 days, unless otherwise expressed; not only because it is one of uniform period, but because it falls naturally into a quarterly division by weeks. Therefore a lease is only for forty-eight weeks, but if it be for "a twelve month," in the singular number, it is good for the whole year. For herein the law recedes from its usual calculation, because the ambiguity between the two methods of computation ceases; it being generally understood that by the space of time called thus, in the singular number, a twelve month, is meant the whole year consisting of the solar revolution. Blackstone's Com., Book II, p. 140-2. A month in tempo-

ral matters, except in *quare impedit*, and at least, some commercial matters, meant, unless a different meaning was shown to be intended, a lunar month; but in ecclesiastic matters it meant a solar month. Talbot vs. Linfield, 1 Hobart, 450; Land vs. Gale, 1 M. & S., 111; Titus vs. Preston, 1 Strange, 652; Cockrell vs. Gray, 3 Brod. & B., 186 Bayley on Bills, 238.; In Barksdale vs. Morgan, 4 Modern, 185, (A. D., 1694,) where on a contract to pay "within *one month* next following," the decision was that the time should be reckoned a lunar month, the court said:   In common parlance the month is taken to be twenty-eight days in all cases except in a *quare impedit*, and therefore it must be so many days according to the common and known acceptation of the word.   In Lacon vs. Hooper, 6 Term Reports, 224, (decided in 1795) where it was held that the word month, if used in a statute without the addition of the word calendar, or anything to show that the legislature meant a calendar month, meant a lunar month, Lord Kenyon said, that the rule had been so long established that it should not be shaken, but confessed that he wished that the rule as first established by the decisions had been otherwise.

That the rule in England was as stated above, until changed by act of parliament during the present reign, cannot be denied; and it is true that in New York the same rule of construction was followed.   Leffingwell

vs. White, 1 John. Cases, 99, decided in 1791, held that calendar months were meant in matters of bills of exchange; Stackhouse vs. Halsey, 3 John. Ch., 73, that a statute as to the advertisement of mortgaged property for sale "once a week for six successive months," meant lunar months. Jackson vs. Clark, 7 John., 217; Loring vs. Halling, 15 John., 119. In People vs. Mayor, &c., of New York, 10 Wend., 365, where a statute allowed the owners of land *two years* from the time of the sale for taxes within which to redeem, and required the municipal authorities to give public notice at least *six months* before the expiration of that period, for four weeks, it was held that months meant calendar months. "Now," says the opinion, "as calendar time is used by the legislature in fixing the period for redemption, it is a just and reasonable inference that they intended to use it in fixing upon the division or point of time specifying the notice to be given to the owners to redeem to the period in the express terms in calendar time, and the six months immediately succeed it, and were intended to include as a part of it, it should be construed to mean the same, otherwise we must believe the legislature intended to fix the different periods by different calculations of time in the same breath, and on the same subject and without any conceivable purpose." See also Snyder vs. Warren, 2 Cow., 518. Parsons vs. Chamberlain, 4 Wend., 512. In the last case, a stat-

ute authorized any Justice of the Peace, who should be removed from office before the collection of the money due on any judgment rendered by him, to issue execution "at any time within six months after such removal." No calendar time was mentioned in the statute, "but," it was said, "the days mentioned in the execution correspond merely to calendar time. Executions are to be issued within thirty or ninety days, and they are returnable within similar periods. There is reason, therefore, to believe that calendar time was intended."

The Supreme Courts of North Carolina and Delaware have, we find, adopted the English view; Rives vs. Guthrie, 1 Jones Law, 84; State vs. Jacobs, 2 Harrington, 548; and there is in Georgia a Superior Court decision to the same effect: Redmond vs. Glover, Dudley, 107.

If the Supreme Court of any other of the states have adopted or approved the English view, neither our own investigation, nor those of counsel, have discovered the fact. It has on the contrary been repudiated by many of the courts for reasons that must commend themselves. Taking in somewhat alphabetical order, the states in which there have been decisions on the subject, we find that in Alabama, in Bartol vs. Calvert, 21 Ala., 42, where the term "months" was used in a statute in 1843 in prescribing the time for filing claims against insolvent estates, they were held to

mean calendar, and not lunar months. Says the opinion, after recognizing the English rule to be as stated above: "In the United States there is some conflict of decisions, but the current of authority is to the reverse of the English rule. The general rule established by the American cases commends itself strongly by its superior convenience, its correspondence with our business transactions, as well as the received understanding in the community, of the meaning of the term, and for these reasons we adopt it in preference to the English rule." In Gross vs. Fowler, 21 Cal., 393, where the term was used in a statute fixing the period for the redemption of property from judicial sales, it was held to mean calendar months. We must construe it, says the court, as we would any other term which the legislature has used, and to which it has not affixed a special definition; it is not a technical term, and therefore it must be taken in its ordinary and general sense; in the general and popular use of the term, calendar months are always intended. In Strong vs. Burchard, 5 Conn., 357, (A. D., 1824,) where the question was whether the time of an execution levied on land had expired by not being recorded within four months from the rendition of the judgment, it was held that the calendar months was its meaning. Having stated the law of the mother country as above in its application to different subjects, the Supreme Court of that State said: "This

fluctuation in the construction of a word cannot fail to produce more uncertainty and inconvenience than is counteracted by any imaginary benefit, when considering it as generally possessing one signification, but occasionally admitting of another. Of this opinion was undoubtedly Lord Kenyon, in Lacon vs. Hooper. * * Uniformity in the construction of a word, not used technically nor governed by the subject-matter, is not only desirable, but unquestionably proper, and the proper meaning of a term used in a statute made to be understood and practiced upon the people, is the only intendment that ought to be adopted. Upon the sound and obvious principle, in this state, as well as in the sister state of Massachussetts, the word month has invariably been expounded to mean calendar month; that is to mean what every one, not a lawyer by profession, believes the word to mean." The Chief-Justice remarked also that the point was solemnly decided thus more than thirty years before by the Superior Court. The decision in Avery vs. Pixley, 4 Mass., 459, (A. D., 1808,) on a statute requiring appeal from the Probate Court to be claimed within one month was that it meant a calendar month, and it was said that in that State, as well before as since the revolution, a month mentioned generally in a statute had immemorably been considered a calendar month. See also Churchill vs. Merchants Bank, 19 Pick., 532, 535. The Supreme Court of Pennsylvania held

in 1794, in Commonwealth vs. Chambre, 4 Dall., 143, that the computation of time under the act of 1780 for the gradual abolition of domestic slaves attending upon persons passing through or sojourning in the state, provided they be not retained in the state "longer than six months," must be by calendar months, the court remarking that the same expression in other statutes of the state had uniformly received the same construction. In Shapley vs. Garey, 6 S. & R., 539, (A. D. 1821) after referring to the fact that in the mother country a month was in common parlance formerly understood to mean twenty-eight days and that hence the English rule of the common law courts, the court says that however wise this rule may have been in its origin, the reason of it has long ceased, at least in this country, where the popular understanding on the subject is so entirely changed that in all the transactions and business of life the month is universally estimated by the calendar ; and the lunar month never enters into the contemplation of any one. In South Carolina, in the case of Alston vs. Alston, 4 Brevard, 469, S. C. 2 Tread., 604, decided in 1814, the term months in an act of 1785 relating to the recording of marriage contracts was decided to mean calendar months. The reasoning of the court was that in common parlance "month" means calendar month ; that in some of the law books it was laid down that it meant lunar month, but the universal method of com-

puting time in that State was by calendar months, and the members of the Legislature must be presumed to have used the word in the act in the same manner as they would have used it on any other occasion. In Williamson vs. Farrow, 1 Bailey, 611, (A. D. 1830) the decision was that the word, when employed in that State in statutes or in judicial proceedings, meant calendar months, and that it was to be understood in the same sense in all matters of contract unless the parties have obviously intended it to mean a lunar month. The Supreme Court of Virginia held in Brewer vs. Harris, 5 Gratt., 285, the meaning of a statute requiring that indentures of apprenticeship should be filed within six months from the date of the order authorizing them to be executed, to be calendar months, and said: "We know perfectly well that with us, by general usage and popular acceptance, whenever the word months is used, without qualification or explanation, in common parlance or business transactions, it is understood to mean calendar and not lunar months. Now, in the use of language not technical, the Legislature must be supposed to express their meaning according to the sense in which it will be understood by the persons for whom they legislate. And that in point of fact this word has uniformly been so employed, we also know from the whole course of our legislation and judicial proceedings. It is impossible, therefore, that the legislative will, thus indicated, can

be controlled and perverted, and extensive mischiefs introduced into our jurisprudence, by the application to the subject of English adjudications. Whatever may be the meaning in this respect of the English statutes, (founded originally upon a different usage and habit) such is not the meaning of our Virginia statutes; and that is all upon such a question which it is our province to adjudicate."

The Circuit Court of the United States, sitting at its April term, 1794, in the district of Pennsylvania, held in the case of Brudenell vs. Vaux, 2 Dall., 302, that the term in question, as used in the mortgage recording act of that State, meant calendar months; and the Supreme Court in a case from Indiana, Sheets vs. Selden, 2 Wall., 117, held that the term month when used in contracts or deeds must be construed where the parties have not given it a definition, and there is no legislative provision on the subject, to mean calendar, and not lunar month. The term, said the court, is not technical, and when the parties have not themselves given it a definition, it must be construed in its ordinary and general sense, and there can be no doubt that in this sense calendar months are always understood; and that the reasons upon which a different rule rests in England with reference to other than mercantile contracts do not outweigh this consideration. That court in Hunt vs. Wickliffe, 2 Peters, 201, (A. D. 1829) following what it understood to be the decision of the Su-

preme Court of Kentucky, held a requirement of a stat-
ute of that State for the publication of an order of the
kind now under consideration, for two months, was
not answered by a publication of eight weeks.

It is evident from these authorities that the English
rule has not been followed generally in this country,
but, on the contrary, it has often been repudiated.
There the features of uniformity of period and of the
divisibility into equal quarterly periods so commended
the lunar month that by common acceptation the word
"month" became and was understood to mean in its
ordinary use a lunar month, and this meaning was
held by the courts to be the one intended by the law
making power when using it. Neither the reasons
which commended the lunar period to the people of
England, nor any other considerations have caused its
general adoption by the people of our own country.
The rule which had become the source of judicial re-
gret there as early as 1795 has never been generally es-
tablished here. Common usage has adopted the cal-
endar periods, and the courts hold that the law-making
power should be understood to have used the term in
the same sense that the people use it, and should give
that effect to it which by common acceptation it has,
and is in common parlance intended to convey, when
used by the people. There is no inconsistency in the
reasons controlling the English courts and the majority
of those of this country, each has given to a word, not

technical, the meaning and effect which it has by common understanding in the territorial jurisdiction spoken for. The meaning of the word "month," as commonly used and understood in Florida is a calendar month. Nobody uses it, or understands it to be used, as meaning anything else, where a contrary meaning is not expressed. There is nothing to suggest that it ever had any other commonly accepted meaning in this State. If it ever had, the present acceptation would doubtless be based upon statute. There is no statute. Should we hold that this statute means lunar months, we would not only disregard the weight of authority, and what we deem the sounder reasons, but we would defeat the intentions of the law-makers. That the Legislatures of thirty-five States and Territories may have defined the term month to mean a calendar month, cannot be regarded as satisfactory evidence that its meaning was otherwise in the respective jurisdictions of any of them other than New York, North Carolina and Delaware, and perhaps Georgia, when we consider that it has been adjudicated in at least six or seven of the thirty-five to mean a calendar month.

This question was considered in the case of Bacom et al. vs. State, 22 Fla., 46, in connection with the use of the word in a judicial order allowing time for settling a bill of exceptions, and the conclusion reached was consistent with the views expressed above. See also Guaranty Trust & Safe Deposit Co. vs. Green Cove Springs & Melrose Railway Co., 11 Supreme Court Reporter, 512.

The "four months" for which the statute requires
an order of this kind published are calendar months,
and this term of publication is a continuous period
equal to four calendar months preceding the day fixed
by the order for the non-resident defendants to appear
and plead; Smith vs. Thompson, 3 Ga., 23; which day
in the case in which Buddington, Wilson & Co., were
complainants, was the first day in December, 1884.
This first Monday fell on the first day of that month.
If the record does not show that the order was pub-
lished once a week for the four months preceding the
appearance day, the decree *pro confesso* was errone-
ously made.    The only proof of publication appearing
in the record is the affidavit of Bemis referred to in
the decree, with which proof the decree is to be con-
sidered in connection.    Hartley vs. Bloodgood, 16
Ala., 233; Hanson vs. Patterson, 17 Ibid, 738; Cullum
vs. Branch Bank, 23 Ibid, 797; Keiffer vs. Barney, 31
Ibid, 192; Randall vs. Songer, 16 Ill., 27; Settlemeir
vs. Sullivan, 97 U. S., 444; Allan vs. Blunt, 1 Blatch.,
480; Cissell vs. Pulaski county, 10 Fed. Rep., 891.
This affidavit was made on the fifteenth day of De-
cember, 1884, and states that the order was "duly
published for nineteen consecutive weeks prior to this
date, to the best of his knowledge and belief," having
previously stated that the newspaper was published
weekly in the town of Green Cove Springs, in Clay
county, in this state.    It does not state what was the
first day of its publication unless we can consider a
date appearing in the printed copy of the advertise-

230 SUPREME COURT.

G. T. & S. D. Co. et al. v. B., W. & Co. et al.—Opinion of Court.

ment of the order attached to and mentioned in the affidavit. This date is below the order, and is as follows: "August 9th, 4 s., 4 mo.;" and our understanding of it is, that it is the usual printers' mark denoting the day of the first insertion, and that it occupies four squares, and is to be published four months. In Langdon vs. Gardner, 20 Vt., 13, the date appearing on a tax collector's advertisement was held to be at least *prima facie* evidence of the time of making it. It is, however, unnecessary for us to invoke this rule or consider this date in reaching the conclusion to be announced, and we do not do so, though it would be fatal to the sufficiency of the publication or validity of the decree. So neither the initial, nor the final publication being shown, we cannot tell on what day the period of nineteen consecutive weeks mentioned in the affidavit began or ended. It may have ended with the fourteenth or thirteenth day of December, and if it did, the first publication was on either the third or second day of August, and if such was the fact, there was not a publication of four months prior to the return day, or December 1st. The order was made in Madison county, in an adjoining circuit to that in which Clay county is, on the 29th day of July, and consequently the first publication must have been either on the 29th, 30th or 31st of that month, or on the first day of August, to admit of four month's time prior to the return day, and if the first publication was not on one of these four days, there could not have been the required notice. It is

JANUARY TERM, 1891. 231

G. T. & S. D. Co. et al. v. B., W. & Co. et al.—Opinion of Court.

impossible for this court, upon the proofs before it, to say that such publication was on either of these four days, or on the other hand, that it was not on the second or third days of August, and the same may be accurately said of the Circuit Judge who granted the order, he having the same and no other evidence before him. The record then does not show that the requisite notice was given, and it is certainly not for us to presume jurisdiction. Jurisdiction must be affirmatively shown by the record where the parties are shown to be non-residents, and constructive service is depended upon for jurisdiction. This is the rule even where the jurisdiction is attacked collaterally. Freeman on Judgments, sec. 127; Allen vs. Blunt, *supra*; Galpin vs. Page. 18 Wall., 350.

The order of publication in the case wherein Phillip J. Canova was complainant was made May 2d, and requires the Chester Construction Company to appear and answer on the first Monday in September following. The affidavit of publication made by Bemis is dated September 1st, of the same year, and states *inter alia* that the order was published for "seventeen consecutive weeks prior to this date, to the best of his knowledge and belief." The fact, however, is that the first Monday in September was the first day of that month, and it is hence apparent that there were not four months from the date of the order to the appearance day, counting either of such days and omitting the other, and hence there could not have been

four months publication prior to appearance day. The error of the order is apparent upon its face.

It is perhaps well for us to say that proofs of publication should be positive, and the sufficiency of affidavits made simply to the best of the deponent's information and belief, as those above were made, is at least questionable.

No jurisdiction was obtained of the Trust Company, nor of the Construction Company, in the former of the two cases, not of the latter company in the other case.

The appeal taken in the name of the Green Cove Springs and Melrose Railroad Company has been dismissed, thus leaving the two companies named above as the sole appellants. No relief was asked or adjudged in favor of the railroad company against either of these appellants; and neither that company, nor anyone else can complain that it is not now before this court.

It is not necessary, nor do we deem it proper to discuss any of the other questions raised by the petition of appeal. The decision of all of them was made in the lower court without appellants having a legal opportunity to be heard, and upon a record by which they are not bound. The decrees appealed from, in so far as they affect the two appellants, or either of them, should be reversed for the reasons indicated above, and it will be so ordered.