MYAKKA COMPANY, A CORPORATION, *Appellant*, v. ROBERT
J. EDWARDS, *Appellee*.

## ON REHEARING.

1. A Court of Equity has power to proceed *in rem* in a suit to
   quiet title or remove a cloud on title to lands in this State,
   upon the proper publication of an order against a non-resident
   defendant.

2. Jurisdiction must be affirmatively shown by the record
   where the parties defendant are shown to be non-residents
   and constructive service is depended on for jurisdiction.

3. The jurisdiction of the court may be attacked collaterally when it is dependent upon constructive service.

4. The orders for publication required by Chapter 4129, Laws of 1893, to be published once a week for four consecutive weeks if the defendant be stated to be a resident of the United States, are required to be published once a week for four weeks of seven days each, or at least twenty-eight days from the date of the first publication to the day fixed in the order for the defendant to appear.

Order affirmed.

*James F. Glen,* for Appellant;

*Arthur F. Odlin,* for Appellee.

ELLIS, J.—This cause was considered by this court during the June Term, A. D. 1914, and the decree of the court below was affirmed.

Upon petition filed by appellant a rehearing was ordered.

The bill of complaint, the plea of the defendant Myakka Company and the order of the court from which this appeal was taken are fully set out in the former opinion by this court.

The Act of the Legislature which was under consideration by this court and which was quoted in full in the opinion written by Justice WHITFIELD, was intended as its title and provisions recite to provide generally for constructive service of orignal process to acquire jurisdiction of non-resident defendants or defendants whose places of residence are unknown, in chancery causes.

The first section of the act directs the judge or clerk of the court in which a bill shall have been filed, upon

proper showing made in a sworn bill or affidavit duly filed, to make an order against the defendant requiring him to appear to the bill upon a day to be fixed by the order not less than thirty nor more than fifty days from the time of the making of the order if the defendant be stated therein to be a resident of the United States, and not less than fifty nor more than eighty days if he be stated to be a non-resident of the United States or if his residence be stated as unknown.

The second paragraph of the section deals with the publication of the orders so made by the judge or the clerk and directs the clerk to have all orders of publication against an absent defendant, whether made by the judge or himself, published with as *little delay* as may be in such newspaper as may be designated in the order, once a week for four consecutive weeks, if the defendant be stated to be a resident of the United States, and once each week for eight consecutive weeks if he be stated to be a non-resident of the United States, or if his residence be stated to be unknown. The clerk was also required, within twenty days of the making of the order, to post a copy of the order at the door of the court-house of the county, and send by mail a copy to the defendant if his residence be shown by the bill or affidavit.

The suit in which the decree was adjudged to be void by the court below, was according to the plea in this cause brought by the appellant in January, 1906, in the Circuit Court for Manatee County against Robert J. Edwards, the appellee in this cause, and the unknown heirs of George B. Nichols and Weston Lewis, deceased, and such other persons whose names were unknown as might be interested in the property described in the bill, for the purpose of quieting the title of appellant to the same lands described in the bill of complaint in this cause as

against the said Edwards as well as against the unknown heirs of the said Nichols and Lewis and such other persons as might be interested in the premises whose names were unknown to the appellant. An affidavit appended to the bill in that cause contained the statements that the said Robert J. Edwards was a resident of a State other than the State of Florida; that the place of residence of the said Edwards as particularly as the same was known to the affiant was in Boston, Massachusetts, and that in the belief of the affiant the said Edwards was over the age of twenty-one years.

According to the plea on the 4th day of January, 1906, an order was made requiring the said Robert J. Edwards to appear to the bill of complaint on the 5th day of February, 1906, thirty-two days from the time of making the order counting the last day. The order was published in the newspaper in Manatee County designated in the order and appeared in four consecutive weekly issues of that paper, as follows: on January 11th, 18th, 25th and February 1st, 1906. From the date of the first publication of the order to and including the day fixed in the order for the appearance of the defendant Edwards, there were twenty-five days. There was a certificate by the clerk showing the publication of the order in the newspaper designated therein and at the times mentioned, also the posting of copies of the order at the court house door of Manatee County, and the mailing of a copy of the order directed to the said Edwards at Boston, Massachusetts.

Edwards failed to appear to the bill, and on June 26th, 1906, the Judge of the Circuit Court made an order that the bill of complaint be taken as confessed against the said Edwards, and reciting that there had been due and legal service by publication, and on the same day made

25—Vol. 68

the final decree against Edwards, which the court below in this cause held to be void.

We hold that the pro confesso order made by the Judge of the Circuit Court on June 26, 1906, reciting that there had been due and legal service by publication, was equivalent to a finding by the court that the order requiring the defendant to apear to the bill, had been published by the clerk with as little delay as might have been in the newspaper designated in the order.

A Court of Equity has power to proceed in rem in a suit to quiet title or remove a cloud on title to lands in this State, upon the proper publication of an order against a non-resident defendant. Gen. Stats. §1950; Chap. 4129 Acts of 1893, Gen. Stats. §1866; 1 Pomeroy Eq. Jur. §135; Tennant's Heirs v. Fretts, 67 West Va. 569, 68 S. E. Rep. 387; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. Rep. 557.

The jurisdiction of the court, therefore, to proceed in rem or quasi in rem to quiet title or remove a cloud on title to land in this State, as against non-resident defendants depends upon the statute providing for constructive service upon such defendants; in this case upon Chapter 4129 Acts of 1893. By such statutes the power is given the court to remove a cloud from the title to lands without having actual jurisdiction over the person of the defendant by means of personal service. It is true that the State can deal with the property within its limits even though owned by non-residents. The limitation upon this power of the State said Judge SHIRAS, in Bennett v. Fenton, 41 Fed. Rep. 283, is as to the mode of procedure.

In Galpin v. Page, 18 Wall. (U. S.) 350, the court announced the principle that when by legislation of a State constructive service of process by publication is substi-

tuted in place of personal service the statutory provision must be strictly pursued in order to bind a citizen of another State not personally served. "Every principle of justice exacts a strict and literal compliance with the statutory provisions."

Mr. Justice BROWN in Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. Rep. 512, said there is scarcely a State in the Union in which the same principle has not been announced and re-affirmed.

Jurisdiction must be affirmatively shown by the record where the parties are shown to be non-residents, and constructive service is depended upon for jurisdiction. This is the rule even where the jurisdiction is attacked collaterally. Guaranty Trust & Safe Deposit Co. v. Buddington, 27 Fla. 215, 9 South. Rep. 246.

In the latter case the court held that the term "months" as used in the Act of November 7, 1828, Sec. 8, page 154 McClellan's Digest, providing for the publication of orders in chancery causes against defendants to appear and plead and for decrees pro confesso in default thereof, means calendar month, and that no jurisdiction was obtained of the absent defendant, as it apeared that there had not been four months "publication prior to appearance day."

The term "week" is as certain, clear and definite a designation of time according to our division of it as it is possible to make.

It was the evident purpose of the Legislature in the enactment of Chapter 4129, Laws of 1893, to require the judge or the clerk in making the order against the absent defendant to regard the facilities for publication which might exist in the county in which the bill was filed and

the order made. The judge or clerk in the order desig-
nated the newspaper in which it was to be published; but
the statute prescribed the duration of such publication.
Its language is "once a week for four consecutive weeks"
or "once each week for eight consecutive weeks." The
language is not that the order shall be published four
times or eight times. It specifies the number of weeks,
not the number of times. The evident purpose in provid-
ing that the publication should be "once a week" or "once
each week" was to avoid a construction that a daily pub-
lication could have been contemplated. If the Legisla-
ture had intended otherwise, it could very easily have
used language to so indicate. Therefore it was deemed
proper by the Legislature to leave a margin of time be-
tween thirty and fifty days in one case, and fifty
and eighty in the other, in which the judge or clerk could
adjust the time for appearance to the period of publica-
tion which the statute requires. It is true that in cases
where the residence of defendants is unknown, the stat-
ute requires the appearance day to be not less than fifty
nor more than eighty days from the time of making the
order, and that full eight weeks publication of the order
could not be secured in cases where the order required
the defendant to appear on the fiftieth day from the time
of making the order; but it by no means follows that a
period of less than eight weeks publication was thereby
required or permitted by the act. At the time the Act
was passed it is doubtful if in six counties in the State
daily newspapers were published. So that in counties
where there were published weekly newspapers an order
might have been made, as contended by apppllant's coun-
sel, requiring an absent defendant whose residence was
unkonwn to appear on a day fifty days from the time of
making the order; yet if the first publication could not

be made in the week the order was made, the clerk could not by publishing the order "with as little delay. as may be," secure more than seven publications before the appearance day. It could not be contended that such a publication would be valid under the act. There is no dispute that there must be at least eight publications in cases where the residence of the defendant is stated to be unknown. It would seem to follow, therefore, that it was the purpose of the statute to require the judge or clerk in making the order, to consider the facilities existing in the particular county for the publication of the order, and adjust the time for appearance to the period during which the statute requires the order to be published.

In the former opinion in this case the court held, in effect, that the use of the word "for" in the statute in connection with the word "weeks" prescribing the period of publication of the order, signified duration of time; and that the requirement of the statute that the publication shall be "once a week for four consecutive weeks" is not complied with when the publication is made once *in* each week when the first publication is less than four weeks or twenty-eight days from the appearance day to which the publication has reference.

Our re-investigation of this case has not led us to a different conclusion. We do not find, as the learned counsel for appelant contends, that the weight of recent authority is against the view of this court, as expressed in the former opinion.

The opinion expressed by the court in State v. Cherry County, 58 Neb. 734, 79 N. W. Rep. 825, has not been overruled, according to our reading of the decisions of that court. The court construed the word "for" to mean "during" when applied to time. In the case of State *ex rel.*

Harris v. Hanson, 80 Neb. 724, 115 N. W. Rep. 294, cited by appellant's counsel to show that the Nebraska Court had received from the view expressed in State v. Cherry County, it was said that where the "time mentioned in the statute expressed the duration of the notice the same must be published *for* and *during* the time mentioned, when, however, the time mentioned indicates the *number* of times the notice is required to be published it is satisfied if the notice is published the number of times mentioned." The court was construing an act providing for the publication of a notice for holding an election to determine whether a drainage district should be established, in our view quite a different matter from the one under consideration in this court where the State is exercising the power through a court to adjudicate on constructive service merely the rights, interest or claims of a non-resident defendant to property in this State.

In the case of Burr v. Finch, 91 Neb. 417, 136 N. W. Rep. 72, a still later Nebraska case, the statute construed omitted the word "for." The question being whether publication of a notice on Thursday, September 14th, Thursday, September 21st, Thursday, September 28th and Friday, October 6th, constituted *four* consecutive publications, it being insisted that the last publication was a day late. The court held this publication sufficient, relying on Davis v. Huston, 15 Neb. 28, 16 N. W. Rep. 820; and Medland v. Linton, 60 Neb. 249, 82 N. W. Rep. 866. The court in State v. Cherry County, *supra,* pointed out that the word "for" was omitted from the statute construed in the Davis case, and in the Midland case the court defined a "week" as a period of time commencing Sunday morning and ending Saturday night. The effect of the decision in the Finch case seems to be that where two certain dates

fall upon days of the same week a publication upon either of those day is a publication *in* that week.

In the case of McDonald v. Nordyke Marmon Co., 9 N. D. 290, 83 N. W. Rep. 6, the court referred approvingly to its former opinion in the case of Finlayson v. Peterson, 5 N. D. 587, 67 N. W. Rep. 953, in which it was held that where a statute requiring a notice to be given "by publishing the same for six successive weeks at least once in each week" meant that such notice must be published weekly *"for"* and "throughout" a period of six full and consecutive weeks and embrace an aggregate of 42 days time and nothing short of 42 days time would satisfy the statutory mandate. The court held that the earlier staute has been superseded by Section 5848 of the Revised Code, providing that publication must be made "Six times, once *in* each week for six successive weeks;" that the period of duration of the publication which was the decisive test under the earlier law had ceased to be controlling under the existing statute, and that the number of publications was one of the controlling factors. In Grandin v. Emmons, 10 N. D. 223, 86 N. W. Rep. 723, the court reaffirmed the construction placed upon the later statute in McDonald v. Nordyke Marmon Co.

There is a great deal of apparent conflict of opinion between the decisions of the various States on this question of publication of notice, but that contrariety of opinion arises upon the construction of the various statutes of the different States. We have found no case in which the statute construed was couched in precisely the same language as ours. Similar language occurs in many statutes. In some States the statute contains additional provisions that control or influence the construction. Some of the statutes relate to tax sales, sheriff's sale, probate proceedings, attachment, notice in elections, legislative.

proceedings, etc., but in each case some word or phrase contained in the particular statute, or the character of the proceedings leads the court to its particlar conclusion.

In Banta v. Wood, 32 Iowa 469, the court considered the notice published in an attachment proceeding. The statute under which the order of publication was made directed that it be published "for such length of time as may be deemed reasonable" "not less than once a week for four weeks" and "that service shall be deemed complete at the expiration of the time prescribed in the order of publication." It also provided that the defendant against whom publication is ordered or his representative on application and sufficient cause shown at any time before judgment must be allowed to defend the action, and except in an action for divorce the defendant or his representative may in like manner, upon good cause shown, be allowed to defend after judgment at any time within one year after notice thereof and within seven years after its rendition on such terms as may be just. The order of publication directed that it be made for four weeks. The court held the service complete at the last publication.

So in Morrow v. Weed, 4 Iowa 77, the question was as to the validity of an administrator's sale of realty upon the order of a Probate Court. The act authorized the court to order notice of sale, in lieu of another notice, to be published "three weeks successively in any newspaper." The court had jurisdiction of the subject-matter by sufficient petition of the administrator to sell the lands to pay debts. The order directed notice to be published "three successive weeks." The court held publication one day in each week sufficient.

The case of Marling v. Robrecht, 13 West Va. 440, was one in which the court ordered an account to be taken. It was a notice of subsequent proceedings in a case in

which the party complaining had been served with process and was apprised of the institution of the suit.

In Saving and Loan Society v. Thompson, 32 Cal. 347, the summons required the defendant to answer within a given number of days after service of the summons. The day for the defendant to act was left open by the summons depending on the time when the service was made complete. The act required the summons to be published "once a week" not less than "three months." The first publication was January 10th, and the last April 9th, 1865, there was publication each week during that period. The court said the month contemplated by the statute meant calendar month, that the time defendant was required to answer did not commence to run until April 10th.

In Knowlten v. Knowlton, 155 Ill. 158, 39 N. E. Rep. 595, the court was considering the validity of a decree of divorce granted in Connecticut. The statute of that State provided that in petitions for divorce, when the adverse party resides out of or is absent from the State, the court or clerk may make such order as he shall deem reasonable, relative to notice. The order required that notice be given to respondent of the pendency of the petition by publishing a copy of the order for "two weeks successively before the term of the court." The order was published once in each of two successive weeks. The Illinois court held the publication sufficient.

In Tidd v. Grimes, 66 Kan. 401, 71 Pac. Rep. 844, the question was the validity of a deed based on a tax sale. The statute required publication of the notice "once *in* each week for four consecutive weeks prior to the sale."

In Alexander v. Alexander, 26 Neb. 68, 41 N. W. Rep. 1065, in the matter of the probate of a will, the statute provided that the court having jrisdiction should appoint

a time and place for proving the will when all concerned may appear, it provided for personal service on all persons interested or by publication under an order in a newspaper "three weeks successively." The court held that the words meant three weekly publications.

In Smith v. Collis, 12 Mont. 350, 112 Pac. Rep. 1070, the statute required "Summons by publication to be published" "once a week for four successive weeks." The court said the statute furnished the key to its own interpretation. The statute expressly provided that "the service of summons is complete on the day of the *fourth* publication." The court said that was a legislative declaration that only four publications were required if there was once in each of four successive weeks.

Our conclusion that the word "for" in our statute means "throughout" or "during the continuance of" and that "for four weeks" means twenty-eight days, and "eight weeks" fifty-six days, is supported by the following authority: Finlayson v. Peterson, 5 N. D. 587, 67 N. W. Rep. 953; Market National Bank v. Pacific National Bank, 89 N. Y. 397; Dever v. Cornwell, 10 N. D. 123, 86 N. W. Rep. 227; Wilson v. Northwestern Mut. Life Ins. Co., 65 Fed. Rep. 38; Wilson v. Thompson, 26 Minn. 299, 3 N. W. Rep. 699; State *ex rel.* Weber v. Tucker, 32 Mo. App. 620; Parsons v. Lanning, 27 N. E. Eq. 70; Wade on Notice, §1105; Foster v. Vehmeyer, 133 Cal. 459, 65 Pac. Rep. 974; 32 Cyc. 490; Guaranty Trust & Safe Deposit Co. v. Buddington, 27 Fla. 215, 9 South. Rep. 246.

As to the second proposition of appellant that the jurisdiction cannot be attacked collaterally, we think the law is settled in this State contrary to that view. Guaranty Trust & Safe Deposit Co. v. Buddington, *supra*.

The former opinion of the court is sustained and the order appealed from is affirmed.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND WHIT-FIELD, J. J., concur.